IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NOVAK DRUCE CONNOLLY BOVE & QUIGG LLP, BURTON AMERNICK, TRACY DRUCE, GREGORY V. NOVAK, and MELVIN A. "MATT" TODD, <br><br> Plaintiffs, <br><br> V. <br><br> JOSE ANTONIO AROCHI, <br><br> Defendant. | § § § § § § § § § § § § § § CIVIL ACTION NO. 4:18-cv-3490 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Novak Druce Connolly Bove + Quigg LLP, a Texas limited liability partnership ("Plaintiff" or "Firm"), Burton Amernick, Tracy Druce, Gregory V. Novak, and Melvin " Matt" Todd (collectively, "Individual Plaintiffs", with "Plaintiff", collectively, the "Plaintiffs"), by and through counsel, make this their Complaint for Declaratory Judgment against Defendant Jose Antonio Arochi, and for cause will respectfully show as follows:

**I.**

**OVERVIEW AND NATURE OF THE ACTION**

1. This is an action at law and in equity seeking declaratory relief pursuant to (1) 28 U.S.C. § 2201(a) and § 2202; (2) 28 U.S.C. § 1332; and (3) 28 U.S.C. § 1367(a), to determine that: (1) none of the Plaintiffs have an obligation to Defendant with respect to any allegations of breach of an employment contract, or any other agreement; (2) Texas law, rather than the District of Columbia Wage Payment and Collection Law, is the governing and applicable law; (3) Defendant abused process by undertaking to harass, frighten and coerce Individual Plaintiffs in an attempt to extract a substantial financial payment to Defendant to

which he is not entitled; (4) Defendant was unjustly enriched by Plaintiff; and (5) Defendant should disgorge the amount of compensation he was overpaid by Plaintiff.

## II.

## PARTIES

2. Plaintiff is a limited liability partnership organized under the laws of the State of Texas, having its principal office in Houston, Texas. At all times relevant to the matters within this litigation, management and control of Plaintiff was directed and maintained through its principal office in Houston, Texas, where contracts for employment were issued and accepted.

3. Plaintiff Burton Amernick ("Amernick") is a citizen of and resides in the state of Maryland. At all times relevant to the matters within this litigation, Amernick was a partner and based in the Firm's District of Columbia office.

4. Plaintiff Tracy Druce ("Druce") is a citizen of and resides in the state of Texas. At all times relevant to the matters within this litigation, Druce was a partner of Plaintiff and based in the Firm's principal office in Houston, Texas.

5. Plaintiff Gregory V. Novak ("Novak") is a citizen of and resides in the state of Texas. At all times relevant to the matters within this litigation, Novak was a partner of Plaintiff and based in the Firm's principal office in Houston, Texas.

6. Plaintiff Melvin "Matt" Todd ("Todd") is a citizen of and resides in the state of Texas. At all times relevant to the matters within this litigation, Todd was a Partner in the Firm and based in the Firm's principal office in Houston, Texas.

7. Defendant Jose Antonio Arochi ("Arochi") is a citizen of Mexico, residing in Mexico City, Mexico, and is subject to service of Summons and Complaint in accord with the Hague Convention on the Service Abroad of Judicial documents in Civil and Commercial

Matters. At all times relevant to the matters within this litigation, Arochi was either based in or supervised and managed through the Firm's principal office in Houston, Texas with his employment contract accepted in Houston, Texas.

## III.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a) and 2202, and pursuant to Rule 57 of the Federal Rules of Civil Procedure. This Court also has subject matter jurisdiction within the supplemental jurisdiction extended through 28 U.S.C. § 1367(a)

9. This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the action arises between citizens of states within the United States and a citizen and resident of a foreign state; and, the amount in controversy exceeds the sum or value of $75,000.00 USD, exclusive of interest and costs.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Arochi conducted his affairs and was supervised and managed under the employment contract primarily within this District through Houston-based partners of the Firm. Defendant accepted employment through an offer extended by the Firm through its principal office in Houston. Defendant conducted business in the Firm's Houston and District of Columbia offices. Defendant, at the times relevant and critical to the matters within this litigation, however, resided and conducted his business affairs in the Houston office and at all times was ultimately supervised and managed through the Houston office and its partners there. This action is based upon compensation allegedly earned through origination credits relating to the matters originated while Defendant was residing in the Firm's Houston office.

## IV.

## **BACKGROUND**

11. On March 28, 2013, Defendant was offered employment through a letter (the "Offer") issued in the Firm's principal office in Houston. The Offer and its terms were agreed to by Defendant, as evidenced by his signature and acceptance on March 28, 2013. A copy of the Offer letter is attached as Exhibit "A".

12. The Offer contained relevant and material terms to which Defendant agreed, including how Defendant would be compensated. The Offer, in pertinent part, provided that Defendant would earn a ***"[b]ase salary of $4,000 per month and 20% of attorneys' fees collected in excess of $20,000 per month on all matters originated by you. Any excess amounts due shall be paid quarterly, in arrears, no later than the 20th day of the first month following the end of the quarter. For example your payment on collections for the second quarter ( April, May, June) of 2013 will be due not later than July 20, 2013"***. The Offer further provided ***"These compensation terms shall remain in effect through the end of the first quarter of 2014 (March 31, 2014), at which time they may be either renewed or renegotiated. The annual goal for minimum collections as an Associate is $500,000.00."***

13. Defendant was compensated pursuant to the Offer, although Defendant failed to achieve the stated annual goal for minimum collections and fee collections did not exceed $20,000 in any given month on matters Defendant originated.

14. Defendant bounced around between the Firm's Houston and District of Columbia offices, but on or about September 2013, Defendant began working solely out of the Houston office on the recommendation of the Firm, which wanted Defendant to meet his annual goals,

achieve success, and to integrate as part of an overall plan for Defendant to focus efforts in Mexico for potential client development.

15. Defendant focused his practice solely out of the Houston office of the Firm to further his goal of increasing his opportunities of achieving percentage based compensation and to develop clients with various other partners of the Firm, in Mexico, and to reduce his personal living expenses because the cost of living in Houston was significantly cheaper than the District of Columbia.  Notably, Defendant was never able to achieve any clients in the Firm's District of Columbia office.

16. Defendant began integrating with the Houston attorneys at the Firm as well as some of the attorneys in the Firm's Delaware office, opening up opportunities for Defendant to earn percentage compensation beyond the Offer Base Salary.  As the Firm had hoped, the integration was good for Defendant and he began to develop clients and achieve originations that could lead to further compensation under the terms of the Offer.

17. On or about November 2013, while officed solely out of Houston, a client was developed jointly between two of the Firm's Delaware partners and Defendant.  This client, and the resulting work therefrom is the basis of the dispute between the Firm and Defendant on Defendant's earned compensation (hereafter, referred to as the "Matter"[1]).

18. Defendant agreed to split origination credit with the two Delaware partners and Defendant's portion of the origination credit was 40% on the Matter and would be compensated under the terms of the Offer based on Defendant's portion of the origination.

---

[1] The client name and the specific nature of the work performed on behalf of the client is confidential.

19. As set forth in the Offer, Defendant was entitled to 20% of attorneys' fees as and only when collected in excess of $20,000 per month in accordance with his origination credit percentage, as well as all other terms of the Offer.

20. While the Matter began to generate attorneys' fee billings during November and December 2013, no attorneys' fees were collected on the Matter in this time frame greater than $20,000 per month. This resulted in Defendant continuing to earn only the base salary set forth in the Offer.

21. In the first months of 2014, Defendant stated that he was personally familiar with and enjoyed a longstanding personal relationship with individuals connected with and controlling the Matter and believed the Matter would generate substantial fees. Defendant also spoke of his growing financial needs, and based on the representations made by Defendant, the Firm adjusted Defendant's base salary to $5,000 per month beginning in January 2014, as an advance against future commissions earned. All other terms of the Offer remained unchanged.

22. As the Offer renewal or renegotiation date approached in March 2014, the Matter had yet to generate any attorneys' fee collections in excess of $20,000 per month, contrary to what had been represented by Defendant. The scope of the Matter expanded and Defendant represented that he thought the additional work, along with an anticipated additional client that Defendant hoped to originate, would generate an immediate $500,000 in attorneys' fee collections.

23. Defendant requested a change to his compensation in March 2014, adjusting the base salary to $145,000 per year, and the Firm agreed. As inducement for the increased compensation, Defendant represented that his personal relationship with the client originating the Matter would insure a prompt collection of what had been a growing and unpaid receivable.

Defendant represented his relationship with the client would further increase the scope of the Matter and advance the Firm's goals of building a practice in Mexico. The increase in base compensation to $145,000 was done with the understanding that certain minimum collections would be realized by Defendant and the new agreed compensation terminated in full the compensation calculation that was in the Offer, including any compensation based on future and yet to be realized collections of attorneys' fees related to the Matter or any other origination credit extended to Defendant.

24. The Matter generated billed attorneys' fees of $524,106.40 between November 2013 and March 2014, but with none of these fees being collected during the stated time period. Non-payment of these fees and additional generated fees through the first quarter of 2015 were as well not paid until after May 2015, well after the termination of the Offer.

25. At the end of the first quarter of 2015, the Firm addressed various performance and representation issues with Defendant as well as termination. Defendant then represented additional clients and matters would come to the Firm through Defendant's father, who is a prominent attorney in Mexico, inducing the Firm to enter into a new compensation agreement with Defendant.

26. Beginning in April 2015, Defendant agreed to new compensation terms based solely on: (i) a percentage of attorneys' fees actually collected for any future originations attributable to Defendant on new matters opened at the Firm beginning from April 2015, and (ii) Defendant's individual billings entered on any matters after April 2015 that were actually collected.

27. Defendant generated no additional business and resigned in March 2016. Taking into account the advances made to Defendant including incorrectly calculated overpayments and

7

adjustments resulting from no further originations or collections by Defendant, Defendant has received more compensation than he is entitled to and should disgorge the overpayment back to the Firm.

## V.

## DEFENDANT'S THREATENED LAWSUIT

28. Defendant has made a demand for $127,928.50 alleging the Firm owes him 20% of the total amount of attorneys' fees collected by the Firm, but: (1) not taking into account the overpayment amount Defendant received; (2) not taking into account that Defendant has miscalculated the compensation under the Offer, both to his entitlement to any such additional compensation as well as the amount, if any; and (3) not taking into account that the fees collected on the Matter being complained of occurred after May 2015 and was not subject to any agreement with Defendant apart from the Offer, which had already terminated as of no later than April 2014.

29. Defendant has provided Plaintiffs with a draft of a complaint against the Firm making threats that he intends to sue the Individual Plaintiffs individually under a wage statute in the District of Columbia.  Finally, Defendant, through counsel, threatened to go to Law360, a legal industry trade press publication, with the filed complaint expecting negative PR for Plaintiffs, as well as their new employer as leverage to get paid.  Plaintiffs therefore file this Complaint for Declaratory Relief.

30. All of the underlying and controlling actions and events which form the basis of the compensation dispute outlined herein, either occurred in or were substantially controlled from and conducted in this District, with Texas law controlling the various agreements and dealings between the Defendant and the Firm.  The various written agreements with Defendant,

as to how Defendant was to be compensated, and the overall course of dealings between Defendant and the Firm relating to his employment and compensation were all originated, occurred, controlled, directed or were otherwise undertaken and accepted between Defendant and the Firm in this District.

## VI.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs collectively request judgment and relief as to the Defendant and pray as follows:

31. A declaration that all Plaintiffs, collectively and individually have not breached any agreement with Defendant;

32. A declaration that Texas law applies and controls, and all Plaintiffs, collectively and individually, are not liable under the District of Columbia Wage Payment and Collection Law;

33. A declaration that Defendant must disgorge to the Firm the amounts of overpaid compensation;

34. A declaration that all Plaintiffs, collectively and individually, shall be entitled to damages as a result of Defendant's abuse of process;

35. A declaration and finding that the Plaintiffs discharged all obligations owed to Defendant;

36. An appropriate award to compensate Plaintiffs for the harm it has been caused by Defendant;

37. All other relief, at law or in equity, to which Plaintiffs or any of them may show as justly entitled to receive and as if fully plead; and

38. All other relief, at law or equity, which this Court may deem just and proper.

        Respectfully submitted,

        **POLSINELLI PC**

By: */s/ Trey Monsour*
        Trey Monsour
        Federal ID No. 12165
        Texas Bar No.  14277200
        tmonsour@polsinelli.com
        1000 Louisiana St., Suite 6400
        Houston, Texas  77002
        Telephone: 713.374.1600
        Facsimile:  713.374.1601

        *ATTORNEY-IN-CHARGE FOR PLAINTIFF,*
        *NOVAK DRUCE CONNOLLY BOVE & QUIGG*
        *LLP, BURTON AMERNICK, TRACY DRUCE,*
        *GREGORY V. NOVAK, and MELVIN A. "MATT"*
        *TODD*